# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **ANNA J. ALLEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-14-CV-429-KC** |
| | § | |
| **BANK OF AMERICA, N.A. et al.,** | § | |
| | § | |
| **Defendants**. | § | |

## <u>ORDER</u>

On this day, the Court considered the Bank Defendants' Motion to Dismiss Plaintiff's Petition and Brief in Support (the "Banks' Motion"), ECF No. 11, and Defendants Jack O'Boyle's, Christopher Ferguson's, and Jack O'Boyle and Associates' Motion to Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "O'Boyle Defendants' Motion"), ECF No. 12, in the above-captioned cause (the "Case"). For the reasons set forth below, the Court **GRANTS** both the Banks' Motion and the O'Boyle Defendants' Motion.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff Anna J. Allen ("Plaintiff") filed her original complaint ("Complaint") in this Court on November 21, 2014. *See* Compl. 1.[1] By the Complaint, Plaintiff asserts various causes of action against Bank of America, N.A. ("BANA") and Deutsche Bank National Trust Company ("Deutsche Bank") (collectively, the "Bank Defendants") in connection with the Bank Defendants' foreclosure of a homestead property located at 19 Garnet Crest Way, El Paso, Texas 79902 (the "Property"). *Id.* at 1-3. The Complaint is jumbled, conclusory, and devoid of any

---

[1] For all court documents, the Court refers to the pagination assigned by the Court's electronic docketing system.

facts explaining the circumstances preceding the Bank Defendants' foreclosure.  Nevertheless, because the Bank Defendants attach copies of the actual mortgage and loan documents to their motion,[2] the Court has been able to discern the following facts relevant to its resolution of the instant motions to dismiss:

On December 14, 2004, Plaintiff's husband, Martin Armendariz ("Armendariz"), obtained a $483,000 home equity loan (the "Loan") from Accredited Home Lenders, Inc. ("AHL").  *See* Texas Home Equity Adjustable Rate Note, Banks' Mot. Ex. A ("Note"), ECF No. 11-1.  The Loan was evidenced by a Note, *see id.*, and secured by a first lien on Plaintiff's and Armendariz's Property.  *See* Texas Home Equity Security Instrument, Banks' Mot. Ex. B ("Security Instrument"), ECF No. 11-2.  The Security Instrument identifies both Armendariz and Plaintiff as "Borrower[s]," and AHL as the "Lender."  *See* Security Instrument 2.  The Security Instrument further identifies the Mortgage Electronic Registration System ("MERS")[3] as the "nominee for Lender and Lender's successors and assigns" and as "the beneficiary under this Security Instrument."  *Id.*  While both Plaintiff and Armendariz signed the Security Instrument, only Armendariz signed the Note.  *Compare id.* at 15, *with* Note 6.

---

[2] As the Fifth Circuit has repeatedly observed, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Here, the Bank Defendants attach copies of both the promissory note and the original security instrument to their motion.  *See* Texas Home Equity Adjustable Rate Note, Banks' Mot. Ex. A, ECF No. 11-1; Texas Home Equity Security Instrument, Banks' Mot. Ex. B, ECF No. 11-2.  Because Plaintiff repeatedly refers to these same documents throughout her Complaint, and because these documents are central to her contention that the Bank Defendants "do not have the right of enforcement of the note and Deed of Trust," Compl. 4, the Court may, and does, consider them without converting the Banks' Motion and the O'Boyle Defendants' Motion into motions for summary judgment.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Causey*, 394 F.3d at 288; *Collins*, 224 F.3d at 498-99.  Moreover, the Court's decision to consider these documents is especially appropriate here, as Plaintiff filed no response to Defendants' motions, and therefore presumably does not object to their inclusion.  *See Crucci v. Seterus, Inc.*, No. EP-13-CV-317-KC, 2013 WL 6146040, at *5 (W.D. Tex. Nov. 21, 2013).

[3] "The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans." *Richardson v. CitiMortgage, Inc.*, Civil Action No. 6:10CV119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010); *see also Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *4 (Tex. App. May 18, 2012).

On October 8, 2009, MERS assigned both the Note and the Security Instrument to Deutsche Bank.  *See* Compl. Ex. C (the "Assignment"); *see also* Compl. 8.  The Assignment was recorded in the Official Public Records of Real Property in El Paso County, and is attached here as an exhibit to Plaintiff's Complaint.[4]  *See* Assignment; *see also* Compl. 8.  Plaintiff identifies BANA as the entity that was tasked with servicing the Loan on Deutsche Bank's behalf.  Compl. 10; *see also* Banks' Mot. 6.

At some point following the Assignment, Plaintiff alleges that BANA contacted her and Armendariz and advised them to stop making monthly payments on the Loan pending a modification agreement.  Compl. 4; *see also* Compl. Ex. A (Plaintiff's and Armendariz's September 6, 2010, application for a loan modification).  Plaintiff alleges that BANA refused to modify the Loan in bad faith, and instead "began the foreclosure process."  *See* Compl. 4.  While Plaintiff does not provide a date or even a general time period for the foreclosure, it is clear that one or both of the Bank Defendants eventually foreclosed on the Property.[5]  *See id.* at 9, 23.  On June 24, 2013, Deutsche Bank purchased the Property at a foreclosure sale, and was granted a Substitute Trustee's Deed.  *See* Banks' Mot. Ex. D (the "Substitute Trustee's Deed"), ECF No. 11-4.[6]  Plaintiff then initiated this action challenging the propriety of the Bank Defendants' foreclosure and asserting various causes of action under federal and state law.

---

[4] As an attachment to the Complaint, the Assignment is considered part of the pleadings for the purposes of a Rule 12(b)(6) motion.  *See Collins*, 224 F.3d at 498.  Moreover, because the Assignment is a "matter[] of public record directly relevant to the issue at hand," it is the proper subject of judicial notice and may be considered on a motion to dismiss.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[5] The Complaint is ultimately ambiguous as to which of the Bank Defendants actually foreclosed on the Property.  *Compare* Compl. 4 (indicating that BANA "began the foreclosure process"), *with id.* at  9 (indicating that Deutsche Bank "foreclose[d] on behalf of" BANA).

[6] Because the Substitute Trustee's Deed was recorded and is therefore a matter of public record, the Court considers it for purposes of resolving the instant motions to dismiss.  *See Funk*, 631 F.3d at 783.

### B.      Plaintiff's Allegations

Although Plaintiff styles this Case as an action arising under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, *see* Compl. 2, her claims are actually far more expansive. The Court summarizes Plaintiff's contentions below.

First, Plaintiff alleges that because she and her husband executed the Loan with AHL, an entity that has since entered bankruptcy, the Bank Defendants are "strangers to the transaction" who foreclosed on the Property "without [proving] their possession of the original note." *Id.* at 3, 10; *see also id.* at 4, 6-9.  Specifically, Plaintiff maintains that there is a "broken chain of title to the note" from AHL to Deutsche Bank, and therefore the Bank Defendants "do not have good and perfected title and the foreclosure is invalid and void." *Id.* at 9.  Second, Plaintiff flatly declares that the Bank Defendants' foreclosure is invalid because "the note and mortgage cannot be split," thus appearing to contend that such a split occurred in this Case when MERS transferred its interest in the Note and the Security Instrument to Deutsche Bank. *Id.* at 7-8. Third, Plaintiff insists that the Assignment from MERS to Deutsche Bank "never was a valid or enforceable transfer" because it occurred more than six months after AHL, the original lender, filed for bankruptcy. *Id.* at 7.  Plaintiff further asserts that, in any event, MERS does not have any authority to assign a mortgage on behalf of a third party. *Id.* at 11.  Fourth, Plaintiff contends that the Bank Defendants "never brought forward evidence that they provided the proper notification regarding any alleged assignment of the note or specifically what rights were assigned." *Id.* at 4.  And fifth, Plaintiff alleges that neither Deutsche Bank nor BANA responded to Plaintiff's "Qualified Written Request" demanding that they "exhibit the instrument." *Id.* at 7, 10.  The Court understands Plaintiff's fourth and fifth contentions as invoking the rights and

protections set forth under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §

2601 *et seq.*

In addition to these assertions, Plaintiff expressly files claims under TILA on the basis

that one or both of the Bank Defendants are vicariously liable for AHL's failure to accurately

disclose the amount financed, the finance charges, and the annual percentage rate at the time of

the Loan's origination.  Compl. 2, 12-17.  Plaintiff further brings claims against the Bank

Defendants for breach of fiduciary duty, common law fraud, and an action to quiet title based on

these same allegations.  *Id.* at 17-20, 22.

Finally, Plaintiff also brings claims against two different law firms involved in the

foreclosure of her home.  First, Plaintiff asserts an Intentional Infliction of Emotional Distress

("IIED") Claim against Defendants Jack O'Boyle and Associates, Jack O'Boyle, and Christopher

Ferguson (the "O'Boyle Defendants") in connection with their legal work on behalf of their

client, Deutsche Bank.  *Id.* at 23.  In support of her IIED claim, Plaintiff alleges that the O'Boyle

Defendants "knew or should have known that there are numerous violations of the [TILA]" and

"knew or should have known that their client does not have standing to foreclose" on the

Property.  *Id.*  Plaintiff also sues the law firm of Barrett Daffin Frappier Turner & Engel, LLP

("Barrett Daffin") based on the theory that the firm is independently liable for certain legal work

it performed on behalf of its client, Deutsche Bank, because the firm "cannot establish [its]

client's property interest in the note."  *Id.* at 6.  There is no indication that Barrett Daffin was

ever served with process in connection with this Case.

Among a long list of legal and equitable remedies, Plaintiff requests an order enjoining

Defendants from evicting her from her home, *id.* at 21, actual damages arising from Defendants'

violations of state and federal law, *id.*, monetary sanctions against the Bank Defendants' for

fraud, including "80,000.00 silver one ounce coins from [BANA] and 80,000.00 silver one ounce coins from [Deutsche Bank]," *id.* at 17, and reasonable costs and attorney's fees associated with the prosecution of this Case. *Id.* at 21. In addition, Plaintiff also seeks a judicial declaration that Defendants violated various federal criminal statutes, including 18 U.S.C. § 1951 (criminalizing actual or attempted robbery or extortion affecting interstate commerce), 18 U.S.C. § 1001 (criminalizing certain false statements to the federal government), 18 U.S.C. § 1010 (criminalizing false statements in connection with loan transactions involving the Department of Housing and Urban Development), 18 U.S.C. § 1014 (criminalizing false statements or reports in loan and credit applications to federally insured financial institutions), 18 U.S.C. § 1028 (criminalizing knowing and unlawful production, transfer, or possession of a false identification document), 18 U.S.C. § 1341 (criminalizing fraud by mail), 18 U.S.C. § 1342 (criminalizing the use of a fictitious name or address to further mail fraud or another unlawful business), 18 U.S.C. § 1343 (criminalizing fraud by wire, radio, or television), and 18 U.S.C. § 1344 (criminalizing fraud against banks). *Id.* at 22-23.

The Bank Defendants filed their motion to dismiss on December 16, 2014. *See* Banks' Mot. 1. The O'Boyle Defendants filed their motion to dismiss on December 17, 2014. *See* O'Boyle Defs.' Mot. 1. To date, Plaintiff has not filed a response to either motion.

## II.   DISCUSSION

### A.   Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins*

*v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011). Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). Nevertheless, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

All documents filed by a *pro se* litigant "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). It is appropriate to treat a *pro se* petition as one seeking the appropriate remedy, however inartfully pleaded. *Clymore v. United States*, 217 F.3d 370, 373 (5th Cir. 2000); *United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996). However, *pro se* litigants are still required to provide sufficient facts in support of their claims; mere conclusory allegations are insufficient. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).

**B.      The Banks' Motion**

Because the Bank Defendants treat the Complaint as asserting only TILA violations, a breach of fiduciary duty claim, an action to quiet title, and a cause of action for common law fraud, many of Plaintiff's contentions go unaddressed in the Banks' Motion.  *See* Banks' Mot. 5-14.  This decision by the Bank Defendants to simply ignore any allegations not explicitly framed within the Complaint as a distinct cause of action is inconsistent with the well-established principle that *pro se* pleadings should be construed liberally.  *See Erickson*, 551 U.S. at 94; *Clymore*, 217 F.3d at 373.  Thus, notwithstanding the Bank Defendants' unwise election to construe the Complaint narrowly, this Court reviews the Complaint broadly and with an eye towards identifying all causes of action reasonably raised by Plaintiff's allegations, no matter how inartfully pleaded.  *See Erickson*, 551 U.S. at 94; *Clymore*, 217 F.3d at 373.  Consistent with this obligation, the Court addresses each of Plaintiff's contentions in turn.

**1.      Plaintiff's various iterations of the "show-me-the-note" theory**

Plaintiff's first contention is that the Court must issue a declaratory judgment invalidating the Bank Defendants' foreclosure because both BANA and Deutsche Bank failed to "document[] their note-holder status" by establishing "their possession of the original note."  *See* Compl. 3; *see also id.* at 6-10.  This argument is colloquially known as the "show-me-the-note" theory, and stems from its advocates' belief that "only the holder of the original wet-ink signature note has the lawful power to initiate a nonjudicial foreclosure."  *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 757 (N.D. Tex. 2013) (internal quotation marks and citation omitted).  This theory has been "roundly rejected" in Texas, and it fares no better when applied to the facts of the instant case. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013).

In *Martins*, the Fifth Circuit set out to "clarify what is required regarding production of a

8

note under Texas law." 722 F.3d at 253.  After observing that every federal district court to have considered the issue had concluded that "assignment of mortgages through MERS and its equivalents [are] valid and enforceable without production of the original, signed note," the Fifth Circuit held that "[t]he original, signed note need not be produced in order to foreclose."  *Id.* at 253-54.  Since *Martins*, the Fifth Circuit has reaffirmed its unequivocal rejection of the "show-me-the-note" theory each time it has surfaced on appeal.  *See Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 593 F. App'x 265, 274 (5th Cir. 2014) ("A party does not need the original note bearing the wet-ink signature to foreclose."); *Casterline v. OneWest Bank, F.S.B.*, 537 F. App'x 314, 316 (5th Cir. 2013) (holding that the "show-me-the-note" theory has no merit under Texas law); *see also Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011) (observing even before *Martins* that "[t]he Texas Property Code provides that either a mortgagee or mortgage servicer may administer a deed of trust foreclosure without production of the original note").  Because there is simply no requirement in Texas that a foreclosing party must produce the original note in order to foreclose, Plaintiff's "show-me-the-note" claim should be dismissed.  *See Shaver*, 593 F. App'x at 274.

Plaintiff's related contentions that the Bank Defendants "must be in possession of the note" and "prove[] their ownership interest in the note" in order to foreclose are similarly unavailing.  *See* Compl. 3, 5; *see also id.* at 8, 10.  "Under Texas law, a mortgagee or mortgage servicer is permitted to foreclose on a house even without holding the note."  *Epstein v. U.S. Bank Nat. Ass'n*, 540 F. App'x 354, 356 (5th Cir. 2013); *see also Wiley v. Deutsche Bank Nat. Trust Co.*, 539 F. App'x 533, 536 (5th Cir. 2013); *Casterline*, 537 F. App'x at 317; *Martins*, 722 F.3d at 255.  Indeed, the Texas Property Code specifically contemplates that a mortgage servicer

may foreclose on behalf of a mortgagee despite not actually possessing the note itself.  *Epstein*, 540 F. App'x at 356 (citing Tex. Prop. Code Ann. § 51.0025).  The Texas Property Code defines a "mortgage servicer" as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument."  Tex. Prop. Code Ann. § 51.0001(3).  Furthermore, a mortgagee is defined as "the grantee, beneficiary, owner, or holder of a security instrument," "a book entry system," or "the last person to whom the security interest has been assigned of record."  *Id.* § 51.0001(4).

Here, there is no question that Deutsche Bank is the mortgagee, as Plaintiff's own exhibit reveals that MERS assigned both the Security Instrument and the Note to Deutsche Bank on October 8, 2009.  *See* Assignment.  Moreover, Plaintiff concedes that BANA was the "loan servicer" in her Complaint, *see* Compl. 10, and the Substitute Trustee's Deed, which is a matter of public record, confirms the accuracy of Plaintiff's representation.  *See* Substitute Trustee's Deed 2.  Plaintiff's allegations regarding her dispute with BANA over payment further confirm that BANA was the valid mortgage servicer at the time of the foreclosure.  *See* Compl. 4. Accordingly, although the Complaint is ambiguous as to which of the Bank Defendants actually foreclosed on the Property, it is plain that both BANA and Deutsche Bank had authority to foreclose.  *See Epstein*, 540 F. App'x at 356-57; *Wiley*, 539 F. App'x at 536; *Casterline*, 537 F. App'x at 317; *Martins*, 722 F.3d at 255; *see also Price v. U.S. Bank Nat. Ass'n*, Civil Action No. 3:13-CV-0175-O, 2013 WL 3976624, at *7 (N.D. Tex. Aug. 2, 2013) (collecting cases rejecting similar arguments).[7]  Plaintiff's arguments to the contrary are without merit.

---

[7] Throughout the Complaint, Plaintiff repeatedly invokes various provisions of the Uniform Commercial Code ("UCC") in support of her various "show-me-the-note" arguments.  *See* Compl. 3-9.  Plaintiff's reliance on these provisions is misplaced.  As numerous courts, including the Fifth Circuit, have held, the UCC does not govern foreclosure actions relating to liens on real property.  *See Tremble v. Wells Fargo Home Mortg., Inc.*, 478 F. App'x 164, 166 (5th Cir. 2012) (citing Tex. Bus. & Com. Code Ann. § 9.109(d)(11)); *see also Hearn v. Deutsche Bank Nat. Trust Co.*, Civil Action No. 3:13-CV-2417-B, 2014 WL 4055473, at *4 n.2 (N.D. Tex. Aug. 15, 2014) (discussing the various reasons why the UCC is inapplicable to wrongful foreclosure actions); *Thompson v. Bank of*

## 2. The "split-the-note" theory

Plaintiff also seeks a declaratory judgment invalidating the Bank Defendants' foreclosure because "the note and mortgage cannot be split." Compl. 7-8. While Plaintiff fails to elaborate on this contention or otherwise apply it in any way to the facts of this Case, the Court understands her argument to be that, because MERS is only referenced in the Security Instrument, MERS did not have any beneficial interest in the Note itself. Thus, as the theory goes, when MERS assigned the mortgage to Deutsche Bank, it automatically split the Note from the Security Instrument, thereby rendering the Assignment void. *See Martins*, 722 F.3d at 254 (discussing the "split-the-note" theory); *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 927 (N.D. Tex. 2014) (same).

In support of her argument, Plaintiff cites to the United States Supreme Court's decision in *Carpenter v. Longan*, 83 U.S. 271 (1872). *See* Compl. 8. In *Carpenter*, the Supreme Court stated that "[t]he note and the mortgage are inseparable," and thus "[a]n assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." 83 U.S. at 274. Although this passage appears at face value to support Plaintiff's position, the Fifth Circuit has explicitly distinguished *Carpenter* as "inapposite, because the Court was addressing Colorado Territorial law and federal common law" and "[n]either controls [the] interpretation of Texas law." *Martins*, 722 F.3d at 254; *see also Preston*, 931 F. Supp. 2d at 759 (distinguishing *Carpenter*).

Instead, like Plaintiff's "show-me-the-note" arguments, the "split-the-note" theory has been rejected repeatedly by the Fifth Circuit as inapplicable in Texas. *See Wiley*, 539 F. App'x

---

*Am., N.A.*, Civil Action No. 3:13-CV-2120-B, 2014 WL 1373505, at *9 (N.D. Tex. Apr. 7, 2014) ("[T]he UCC does not apply to foreclosure efforts."); *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 749 (E.D. Tex. 2013) ("This Court has consistently held that because deeds of trust place liens on real property they are not governed by the UCC . . . ."); *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App. 1998) ("Because the Deed of Trust places a lien on *real* property, it is not governed by the UCC.").

at 536-37 (holding that the split-the-note theory is inapplicable where the foreclosing party is a mortgagee and the mortgage has been properly assigned); *Martins*, 722 F.3d at 255 (holding that the split-the-note theory is inapplicable where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned); *see also Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 278 (5th Cir. 2014) ("We have repeatedly rejected similar attempts to challenge an assignee's standing to foreclose under an assignment from MERS."); *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 342 (5th Cir. 2013) ("MERS and its assigns [are permitted] to bring foreclosure actions under the Texas Property Code.").  Thus, to the extent Plaintiff's request for a declaratory judgment invalidating the foreclosure is based on the "split-the-note" theory, her claim fails as a matter of law.

### 3.    Challenges to the validity of the Assignment

Plaintiff's final basis for her requested declaratory judgment rests upon the validity of the Assignment.  Specifically, Plaintiff contends that "the alleged assignor MERS, cannot function as a nominee or agent of [AHL], given that [AHL] filed for bankruptcy in May of 2009 and the Assignment . . . was signed in December of 2009."  Compl. 7.  According to Plaintiff, "[t]he assignment of assets of the bankrupt corporation cannot be done or even entered into when the bankruptcy trustee is in custody and control of the corporate assets as a trustee and the trustee has the sole authority to sell or assign assets of the corporation in bankruptcy."  *Id.*  In addition to her attack on MERS's authority to assign the Loan, Plaintiff also asserts that "the signer of the Assignment appears to be an employee of [Barrett Daffin] and not a MERS executive, as alleged."  *Id.* at 7-8.

As an initial matter, Plaintiff's second contention – that the individual who executed the Assignment lacked actual authority to transfer the Loan – fails for lack of standing.  In *Reinagel*

*v. Deutsche Bank National Trust Co.*, 735 F.3d 220 (5th Cir. 2013), the Fifth Circuit held that a plaintiff lacks standing to challenge an assignment on any basis that merely renders the assignment voidable at the election of the assignor.  *See id.* at 225-26.  Like Plaintiff here, the *Reinagel* plaintiffs argued that Deutsche Bank did not have authority to foreclose on their home because the individual that purported to assign Deutsche Bank the mortgage was not an authorized agent of the original mortgagee.  *See id.* at 226.  The Fifth Circuit concluded that the plaintiffs lacked standing to assert this argument because, under Texas law, "a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal."  *Id.*

Like in *Reinagel*, Plaintiff cannot challenge a facially valid assignment on the basis that the individual who assigned the mortgage to Deutsche Bank lacked actual authority to execute the transaction.  *See id.* at 228 ("[U]nder Texas law, facially valid assignments cannot be challenged for want of authority except by the defrauded assignor."); *see also Golden v. Wells Fargo Bank, N.A.*, 557 F. App'x 323, 326 (5th Cir. 2014) (holding that plaintiffs lacked standing to challenge assignment on the basis that the signer "did not have the authority to execute the assignment"); *Lassberg v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, No. 4:13-CV-577, 2015 WL 123756, at *4 (E.D. Tex. Jan. 8, 2015) ("An assertion that the person who executed the assignment lacked authority to do so renders the assignment merely voidable, not void."). Instead, only MERS, as the alleged defrauded assignor, can challenge its validity.  *See Reinagel*, 735 F.3d at 228.

Plaintiff's initial contention – that the Assignment is defective in light of AHL's 2009 bankruptcy – fails on its own terms.  In Texas, security instruments in real property are generally

assignable absent a contrary provision.  *See Miceli v. The Bank of N.Y. Mellon*, No. 1:13-CV-1032-DAE, 2015 WL 300671, at *5 (W.D. Tex. Jan. 21, 2015) (citing *Crowell v. Bexar Cnty.*, 351 S.W.3d 114, 117 (Tex. App. 2011)).  Here, not only does the Security Instrument contain no provision limiting assignment, but it affirmatively contemplates MERS assigning its interest in the Property when it identifies the beneficiary under the Security Instrument as "MERS . . . and the successors and *assigns* of MERS."  Security Instrument 3 (emphasis added).  Thus, under the Security Instrument that Plaintiff signed, MERS had every right to assign its interest in the Property to Deutsche Bank.  Moreover, the fact that AHL filed for bankruptcy some four years after the Security Instrument was executed does not deprive MERS of its previously acquired authority to assign its interest to a third party.

Indeed, at least three other district courts confronted with this identical argument in the face of a bankrupt lender have reached the same conclusion.  *See Newton v. New Century Mortg. Corp.*, No. A-14-CA-990-SS, 2014 WL 7016133, at *4 (W.D. Tex. Dec. 11, 2014) ("MERS obtained its rights under the Deed of Trust in August 2006, and New Century's subsequent bankruptcy did not affect its authority to assign its interest to another entity."); *Applin v. Deutsche Bank Nat. Trust*, Civil Action No. H-13-2831, 2014 WL 1024006, at *5 (S.D. Tex. Mar. 17, 2014) ("[B]ecause MERS obtained its rights under the deed in 2006, before New Century's bankruptcy, MERS held the legal title to the interests granted by the Applins and had the authority, irrespective of New Century's legal status, to assign its interest in the mortgage to Deutsche Bank.") (internal quotation marks and citation omitted); *Khan v. Wells Fargo Bank, N.A.*, Civil Action No. H-12-1116, 2014 WL 200492, at *8 (S.D. Tex. Jan. 17, 2014) ("The bankruptcy court's order does not divest MERS of interests it previously acquired with regard to properties on which New Century made loans as to which MERS was nominee prior to New

14

Century's bankruptcy."); *see also L'Amoreaux v. Wells Fargo Bank, N.A.*, 755 F.3d 748, 750 (5th Cir. 2014) (rejecting similar argument that MERS lacked authority to assign the deed of trust where, at the time of the assignment, the original lender no longer existed).

In sum, because Plaintiff lacks standing to challenge the Assignment on the basis that the signer was not an authorized agent of MERS, *see Reinagel*, 735 F.3d at 226, 228, and because Plaintiff's argument that AHL's bankruptcy cut off MERS's authority to assign the Note and the Security Instrument fails as a matter of law, *see, e.g.*, *Newton*, 2014 WL 7016133, at *4, the Court finds that Plaintiff is not entitled to a declaratory judgment invalidating the Bank Defendants' foreclosure.

### 4.        Equitable action to quiet title

Plaintiff also seeks an order quieting title to the Property and declaring the Bank Defendants' foreclosure void.  *See* Compl. 22.  A suit to quiet title is an equitable cause of action to remove a cloud from the title of a property created by an invalid claim.  *See Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App. 2009).  In order to prevail, a plaintiff must establish that:  (1) she has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable.  *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citation omitted); *see also Wagner v. CitiMortgage, Inc.*, 995 F. Supp. 2d 621, 626 (N.D. Tex. 2014).  "A plaintiff in a suit to quiet title must prove and recover on the strength of [her] own title, not the weakness of [her] adversary's title."  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. 2001); *see also Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App. 2012).

As discussed in detail above, the Complaint contains no facts that would allow the Court to infer that Plaintiff possesses superior title to the Property.  Plaintiff does not allege that she or

Armendariz are current on their mortgage payments, nor does she deny that Armendariz defaulted on the Note.  Plaintiff's unsupported attacks on the Bank Defendants' authority to foreclose are insufficient to survive a motion to dismiss.  *See, e.g.*, *Herrera v. Wells Fargo Bank, N.A.*, Civil Action No. H-13-68, 2013 WL 961511, at *9 (S.D. Tex. Mar. 12, 2013) (holding that a plaintiff's attacks on the mortgagee's authority to foreclose on the property are "not relevant" to a claim to quiet title); *Bell v. Bank of Am. Home Loan Servicing LP*, Civil Action No. 4:11-CV-02085, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (collecting cases).

### 5.      Plaintiff's RESPA claim

In addition to challenging the Bank Defendants' authority to foreclose, Plaintiff also asserts that the Bank Defendants failed to comply with certain statutory obligations. Specifically, Plaintiff asserts that the Bank Defendants "never brought forward evidence that they provided the proper notification regarding any alleged assignment of the note or specifically what rights were assigned, which is required under [the] Uniform Commercial Code."  *See* Compl. 4.[8]  Plaintiff further asserts that the Bank Defendants never responded to her "Qualified Written Request" demanding that they "exhibit the instrument."  *See id.* at 7, 10.  As noted briefly above, the Court construes these allegations as invoking the protections set forth under RESPA, *see Clymore*, 217 F.3d at 373, and addresses each of Plaintiff's contentions separately below.

#### a.      Notice of assignment, sale, or transfer

RESPA is a federal statute enacted "to insure that consumers throughout the Nation are

---

[8] Plaintiff never identifies the specific provision of the UCC that she is relying upon in support of this statement of law.  Instead, she cites to *Kirby v. Palos Verdes Escrow Co.*, 183 Cal. App. 3d 57 (Cal. Ct. App. 1986), a 1986 California Court of Appeal case which held that an escrow company with actual notice of an assignment was negligent in paying escrow funds to the assignor rather than the assignee.  *See id.* at 65-66.  Setting aside the fact that *Kirby* was decided under California law, its holding plainly has no connection to any material issue in this Case. Moreover, as already noted, Texas's version of the UCC does not apply to "the creation or transfer of an interest in or lien on real property."  *See* Tex. Bus. & Com. Code Ann. § 9.109(d)(11).

16

provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601(a).  Section 2605 of RESPA requires that both the "transferor" and "transferee" loan servicer notify a borrower in writing whenever the servicing of a borrower's mortgage is assigned, sold, or transferred from one entity to another.  *See* § 2605(b)(1), (c)(1); *see also Lombardi v. Bank of Am.*, Civil Action No. 3:13-CV-1464-O, 2014 WL 988541, at *17 (N.D. Tex. Mar. 13, 2014).  To state a claim under this provision, a plaintiff must allege actual damages resulting from the RESPA violation.  *See* 12 U.S.C. § 2605(f)(1); *Kareem v. Am. Home Mortg. Servicing, Inc.*, 479 F. App'x 619, 620 (5th Cir. 2012); *Lombardi*, 2014 WL 988541, at *17; *Hurd*, 880 F. Supp. 2d at 768-69.

Here, Plaintiff's vague and conclusory allegations are insufficient to state a claim under RESPA for several reasons.  At the outset, a careful reading of the Complaint reveals that Plaintiff is not even alleging that the Bank Defendants failed to timely notify her of the Assignment; rather, she merely states that the Bank Defendants "never brought forward evidence" that they affirmatively complied with their obligations under the statute.  *See* Compl. 4.  Because RESPA does not require a loan servicer to "bring forward evidence" of its compliance absent any allegation of wrongdoing, Plaintiff's claim fails on this basis alone.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Moreover, because RESPA imposes obligations solely upon loan servicers,[9] its notification provisions are only triggered if the *servicing* of a borrower's loan is transferred from

---

[9] RESPA defines "servicer" as "the person responsible for servicing of a loan . . . ."  12 U.S.C. § 2605(i)(2).

one entity to another.[10]  *See* 12 U.S.C. § 2605(b)(1), (c)(1) (imposing notification obligation only upon "servicer[s]" and "transferee servicer[s]").  Here, though it is undisputed that the Loan was assigned from MERS to Deutsche Bank on October 8, 2009, Plaintiff alleges no facts supporting an inference that the servicing of the Loan was ever transferred between different entities.  As a result, Plaintiff fails to state a plausible cause of action under § 2605's notification provisions.  *See Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124-25 (3d Cir. 2010) (finding that mortgagees were not "servicers" under the terms of the loan and therefore could not as a matter of law incur liability under RESPA); *Daw v. Peoples Bank & Trust Co.*, 5 F. App'x 504, 505 (7th Cir. 2001) (holding that RESPA's notification provisions were not triggered where the loan assignment did not affect the servicing of the borrower's loan); *Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153, 1161 (D. Haw. 2012) (Ezra, J.) ("RESPA governs the notice requirements where loan servicing is assigned, sold, or transferred, *see* 12 U.S.C. § 2605, but does not govern notice requirements where a note or mortgage is transferred.").

Finally, even assuming that there was a change in the servicing of the Loan, and even assuming that Plaintiff did not receive the required notification under RESPA, Plaintiff's claim still fails because the Complaint contains no facts explaining how this alleged violation impeded Plaintiff's ability to pay the mortgage, or otherwise caused her to incur actual damages.  *See Kareem*, 479 F. App'x at 620; *see also Hurd*, 880 F. Supp. 2d at 768-69 (dismissing a plaintiff's RESPA claim where the plaintiff failed to allege any facts supporting a reasonable inference that she suffered actual damages as a result of the servicer's failure to provide the required notice); *Akintunji v. Chase Home Fin., L.L.C.*, Civil Action No. H-11-389, 2011 WL 2470709, at *2-3

---

[10] Under RESPA, the term "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).

(S.D. Tex. June 20, 2011) (same).

### b.      Qualified written requests

Next, § 2605(e) of RESPA provides that if a loan servicer receives a qualified written request from the borrower for information relating to the servicing of her loan, the loan servicer must send a written response acknowledging receipt of the correspondence within five days, unless the requested action is taken before the five-day period expires.  *See* 12 U.S.C. § 2605(e)(1)(A).  Additionally, RESPA requires that the loan servicer take corrective action or otherwise substantively respond to the borrower's inquiry within thirty days of receiving the qualified written request.  *See id.* § 2605(e)(2).  Section 2605(e) defines a "qualified written request" as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that . . . includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  *Id.* § 2605(e)(1)(B).  To state a claim for a loan servicer's failure to respond to a qualified written request, a borrower must allege facts supporting an inference of actual damages.  *See Whittier v. Ocwen Loan Servicing, L.L.C.*, No. 13-20639, 2014 WL 6791382, at *3 (5th Cir. Dec. 3, 2014); *see also Steele v. Quantum Servicing Corp.*, Civil Action No. 3:12-CV-2897-L, 2013 WL 3196544, at *6 (N.D. Tex. June 25, 2013); *Hurd*, 880 F. Supp. 2d at 768; *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 627 (S.D. Tex. 2010).

To corroborate her RESPA allegations, Plaintiff attaches three substantially identical letters to her Complaint.  *See* Compl. Ex. D.  All three of these letters were sent not by Plaintiff, but by her husband, Armendariz, on February 12, 2014.  *See id.*  Only one of these letters was

sent to BANA, the actual loan servicer in this Case.[11]  *See id.*  The letter Armendariz sent to

BANA reads as follows:

> Please exhibit the Instrument for loan number 068893073 BANK
> OF AMERICA, NA, pursuant to UCC 3-501(b)(2).   This is a
> Qualified Written Request submitted under the authority of Title
> 12 USC, Section 2605e.

*Id.*

Accepting Plaintiff's allegations as true, and applying the standards discussed above, the

Complaint fails to state a claim upon which relief may be granted.  Even if the Court were to

assume that Plaintiff's status as a signee on the Security Instrument allows her to maintain this

claim on Armendariz's behalf, the February 12, 2014, letter to BANA plainly does not constitute

a qualified written request.  Courts have consistently held that a borrower's written demand for

the production of certain loan documents does not relate to the "servicing" of a loan, and

therefore does not trigger a loan servicer's response obligations under the statute.  *See Ward v.*

*Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012) (letter

demanding copies of loan documents was "a communication challenging the validity of the loan

and not a communication relating to the servicing of the loan as defined by *statute*."); *Junod v.*

*Dream House Mortg. Co.*, No. CV 11-7035-ODW (VBKx), 2012 WL 94355, at *3-4 (C.D. Cal.

Jan. 5, 2012) (letter demanding, among other things, "a true and present copy of the promissory

note and deed of trust" was not a qualified written request as contemplated under RESPA);

*Liggion v. Branch Banking & Trust*, No. 1:11-CV-01133-WSD, 2011 WL 3759832, at *3 (N.D.

Ga. Aug. 24, 2011) ("Plaintiff's information document requests are not a proper qualified written

request under RESPA because they do not relate to the servicing of the loan."); *Jones v. PNC*

*Bank, N.A.*, No. 10-CV-01077-LHK, 2010 WL 3325615, at *2 (N.D. Cal. Aug. 20, 2010) ("A

---

[11] The other two letters were sent to Barrett Daffin and Select Portfolio Servicing, Inc., respectively.  *See* Compl. Ex. D.  Plaintiff does not mention Select Portfolio Servicing, Inc. at any other point in the Complaint, and the entity is not named as a defendant in this Case.

QWR must seek information relating to the *servicing* of the loan; a request for loan origination documents is not a QWR."); *see also Kelly v. Fairon & Assocs.*, 842 F. Supp. 2d 1157, 1160 (D. Minn. 2012) ("Requests for information pertaining to the identity of a note holder or master servicer do not relate to servicing.").

Additionally, like her previous RESPA claim, Plaintiff's claim arising under § 2605(e) fails for the additional reason that the Complaint contains no factual allegations that Plaintiff sustained actual damages as a result of BANA's alleged failure to respond to Armendariz's February 12, 2014, letter.  *See Whittier*, 2014 WL 6791382, at *3; *see also Steele*, 2013 WL 3196544, at *6; *Hurd*, 880 F. Supp. 2d at 768; *Bittinger*, 744 F. Supp. 2d at 627.  Accordingly, for all these reasons, the Court dismisses Plaintiff's RESPA claim.

### 6.    TILA violations

Read broadly, Plaintiff brings two distinct causes of action against the Bank Defendants under TILA:  (1) an action for rescission of the Loan, and (2) an action for actual and statutory damages.  *See* Compl. 12-17.  In support of these claims, Plaintiff asserts that the original lender, AHL, "did not disclose the 'amount financed,' the 'finance charge,' and the 'annual percentage rate' applicable to the loan."  *Id.* at 13.  Plaintiff further asserts that "the [Bank] Defendants are vicariously liable for these violations."  *Id.*  The Bank Defendants respond that Plaintiff does not have standing to assert violations of TILA because she is not listed as a borrower under the Note.  *See* Banks' Mot. 8-9.  The Bank Defendants further argue that Plaintiff's claims are barred by the applicable statute of limitations.  *Id.* at 9-10.

Because the Court credits the Bank Defendants' second argument, it does not address whether Plaintiff's signature on the Security Instrument is alone sufficient to confer the requisite statutory standing under TILA.  The Court first addresses Plaintiff's claim for rescission.  Under

TILA, "when a loan made in a consumer credit transaction is secured by the borrower's principal

dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms

or to disclose important terms accurately." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411

(1998) (citing 15 U.S.C. § 1635). However, a borrower's right to rescind a loan is not unending;

the statute provides that it "shall expire three years after the date of consummation of the

transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f); *see

also Beach*, 523 U.S. at 411, 413; *Lowery v. Capital One Mortg.*, 429 F. App'x 377, 378 (5th

Cir. 2011) ("[T]he right to rescission under the TILA expires after three years."); *Taylor v.

Domestic Remodeling, Inc.*, 97 F.3d 96, 98 (5th Cir. 1996) ("If the creditor fails to deliver the

forms, or fails to provide the required information, then the consumer's right of rescission

extends for three years after the date of consummation of the transaction.").

Here, because Plaintiff and Armendariz executed the Note and the Security Instrument on

December 14, 2004, the deadline for rescission expired on December 14, 2007. *See* Note 2;

Security Instrument 2; 15 U.S.C. § 1635(f). Accordingly, Plaintiff's request for rescission

almost a decade after the Loan was originally consummated fails as a matter of law. *See Beach*,

523 U.S. at 411, 413; *Lowery*, 429 F. App'x at 378; *Taylor*, 97 F.3d at 98.

Plaintiff's TILA claim for damages is similarly time-barred. Under TILA, a claim

seeking damages arising from a lender's non-disclosure must be filed within one year from the

date of the occurrence of the violation. *See* 15 U.S.C. § 1640(e); s*ee also Hopson v. Chase

Home Fin. LLC*, 14 F. Supp. 3d 774, 785 (S.D. Miss. 2014); *Bittinger*, 744 F. Supp. 2d at 628.

The Fifth Circuit has clarified that a violation "'occurs' when the transaction is consummated."

*Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) (internal quotation marks and

citation omitted). Moreover, it is well-settled that "[n]ondisclosure is not a continuing violation

for purposes of the statute of limitations."  *Id.*  Thus, as noted above, it is apparent from the face of the Complaint that Plaintiff's suit for monetary damages under TILA expired long before she instituted the instant Case.  *See* Note 2; Security Instrument 2; 15 U.S.C. § 1640(e); *Moor*, 784 F.2d at 633; *Hopson*, 14 F. Supp. 3d at 785; *Bittinger*, 744 F. Supp. 2d at 628.

The fact that Plaintiff characterizes her TILA non-disclosure action as "a claim in recoupment" does not compel an alternative result.  Compl. 12; *see also id.* at 15-16, 22.  Under certain circumstances, a plaintiff may maintain a defensive action for recoupment without running afoul of TILA's one-year statute of limitations for damages claims.  *See Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 187 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008).  Specifically, TILA provides that the one-year statute of limitations provision "does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law."  *See* 15 U.S.C. § 1640(e).  "To meet the requirements for recoupment, a debtor must show that: (1) the TILA violation and the debt are products of the same transaction; (2) the debtor asserts the claim as a defense; and (3) the main action is timely."  *Williams*, 504 F. Supp. 2d at 188 (citing *Moor*, 784 F.2d at 634).

Generally, "[w]hen the debtor hales the creditor into court . . . the claim by the debtor is affirmative rather than defensive."  *Moor*, 784 F.2d at 634.  Nevertheless, the mere fact that the party raising the recoupment claim is the plaintiff in a TILA case does not necessarily preclude a finding that the claim is raised defensively.  *See Coxson v. Commonwealth Mortg. Co. of Am., L.P.*, 43 F.3d 189 (5th Cir. 1995).  In *Coxson*, the Fifth Circuit held that the plaintiffs' TILA claim was not barred by the one-year statute of limitations because it fell within the definition of

a defensive recoupment action.  *Id.* at 194.  There, the plaintiffs executed a loan secured by a deed of trust on their property with Commonwealth Mortgage Company of America ("Commonwealth").  *Id.* at 190.  After defaulting on their mortgage payments, the plaintiffs filed for bankruptcy.  *Id.*  The bankruptcy court issued an agreed order restructuring the plaintiffs' payments and establishing certain procedural requirements for foreclosure.  *Id.*  Just two months later, Commonwealth filed a "proof of claim" in the bankruptcy court asserting that the plaintiffs were in default under the terms of the agreed order, and immediately attempted to foreclose on the subject property.  *Id.*  In response, plaintiffs filed an adversary proceeding in the bankruptcy court claiming that the original loan documents violated TILA.  *Id.*  While the bankruptcy court found that the plaintiffs' TILA claim was time barred, *id.*, both the district court and the Fifth Circuit held that because the plaintiffs filed the TILA action in response to Commonwealth's proof of claim and its subsequent foreclosure efforts, the TILA claim was defensive in nature, and therefore not subject to the one-year statute of limitations.  *Id.* at 194.

Applying these standards here, the Court finds that Plaintiff's TILA claim is not subject to the recoupment exception.  Unlike in *Coxson*, Plaintiff's claim was not filed as a defense to a lender's foreclosure efforts, but rather as an affirmative action seeking to invalidate a foreclosure that had already taken place.  *See* Substitute Trustee's Deed 2.  Moreover, while Plaintiff references an eviction case currently pending in state court, *see* Compl. 10, an eviction proceeding is not "an action to collect [a] debt," and therefore cannot support Plaintiff's assertion of a defensive recoupment action as a matter of law.  *See* 15 U.S.C. § 1640(e).  Finally, while Plaintiff's Complaint is not a model of clarity, Plaintiff does not appear to be "seeking to reduce the sums owed to the lender or to reduce its recovery, but is instead seeking affirmative relief for an independent claim."  *Williams*, 504 F. Supp. 2d at 188 (distinguishing *Coxson* and holding

24

that a plaintiff's TILA claim was not a defensive recoupment action).  Under these

circumstances, the Court finds that Plaintiff's TILA claim is not a defensive recoupment action,

and is therefore barred by TILA's one-year statute of limitations.  *See id.*

### 7.      Breach of fiduciary duty

Plaintiff next alleges a state law cause of action for breach of fiduciary duty against the

Bank Defendants.  "Under Texas law, the elements of a cause of action for breach of fiduciary

duty are: (1) that the plaintiff and defendant had a fiduciary relationship; (2) the defendant

breached its fiduciary duty to the plaintiffs; and (3) the defendant's breach resulted in injury to

the plaintiff."  *Williams*, 504 F. Supp. 2d at 192 (citing *Jones v. Blume*, 196 S.W.3d 440, 447

(Tex. App. 2006)).  Here, Plaintiff fails to meet these elements as a matter of law because "Texas

courts have held that the relationship between a borrower and lender is not a fiduciary one."  *Id.*

(citing *1001 McKinney Ltd. v. Credit Suisse First Bos. Mortg. Capital*, 192 S.W.3d 20, 36 (Tex.

App. 2005); *Mfrs.' Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 610 (Tex.

App. 1991)); *see also Bittinger*, 744 F. Supp. 2d at 626 ("Texas law does not recognize a

fiduciary relationship between a borrower and a lender.").  For this reason alone, Plaintiff cannot

state a claim for breach of fiduciary duty against either of the Bank Defendants.

### 8.      Common law fraud

Plaintiff's final cause of action against the Bank Defendants is one for common law

fraud.  "The elements of fraud in Texas are (1) the defendant made a representation to the

plaintiff; (2) the representation was material; (3) the representation was false; (4) when the

defendant made the representation the defendant knew it was false or made the representation

recklessly and without knowledge of its truth; (5) the defendant made the representation with the

intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the

representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).  When a plaintiff brings a state law fraud claim in federal court, she must satisfy the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b).  *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010).

Here, the entirety of Plaintiff's fraud allegations concern statements that AHL allegedly made to Plaintiff and Armendariz during the Loan origination process.  *See* Compl. 19-20. Indeed, Plaintiff does not even mention Deutsche Bank or BANA in setting out her fraud claim. *Id.*  Thus, even if this Court were to ignore the fact that Plaintiff's allegations do not approach the specificity required to satisfy the heightened pleading standard applicable to fraud under Rule 9(b), Plaintiff's fraud claim still fails because the entity that committed the alleged fraud, AHL, is not a party to this Case.  Moreover, to the extent Plaintiff's fraud claim is predicated upon statements and omissions allegedly made during the Loan origination process in December of 2004, her claim is barred by the applicable statute of limitations.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (setting forth four-year statute of limitations for fraud claims).  For these reasons, the Court dismisses Plaintiff's fraud claim.

### 9.    Plaintiff's remaining requests for declaratory and injunctive relief

As noted above, Plaintiff requests a variety of injunctive and declaratory relief.  *See* Compl. 21-23.  "Generally, a request for injunctive relief is not considered an independent 'cause of action,' but rather a remedy sought to redress the wrongs alleged in the underlying substantive claims."  *La. Crisis Assistance Ctr. v. Marzano-Lesnevich*, 878 F. Supp. 2d 662, 669 (E.D. La. 2012) (collecting numerous federal cases so holding).  Similarly, the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, "is merely a vehicle that allows a party to obtain an 'early

adjudication of an actual controversy' arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, Civil Action No. 3:08-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (quoting *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990)).  Thus, once a court has dismissed all the substantive causes of action, there is no longer a live case or controversy, and therefore no longer any rights left for the court to declare.  *See Lyons v. Am.'s Wholesale Lender*, 13 F. Supp. 3d 636, 660 (N.D. Tex. 2014) ("[A] request for declaratory judgment is remedial in nature and dependent upon the assertion of viable causes of action."); *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 591 (N.D. Tex. 2013) (same); *Hurd*, 880 F. Supp. 2d at 769 (similar).

As discussed in detail above, none of Plaintiff's federal or state claims survive the Banks' Motion.  Accordingly, in the absence of a cognizable cause of action, the Court finds that Plaintiff is not entitled to any declaratory or injunctive relief.  *Young v. Bank of Am., N.A.*, Civil Action No. 4:13-CV-2489, 2014 WL 4202491, at *11 (S.D. Tex. Aug. 19, 2014) ("The law is clear that injunctive relief is an equitable remedy, not a cause of action, and should be dismissed when no substantive legal claims are pled."); *Smith v. JPMorgan Chase Bank, N.A.*, Civil No. 3:13-CV-4533-M-BK, 2014 WL 1318526, at *3 (N.D. Tex. Apr. 2, 2014) ("[B]ecause Plaintiff's substantive claim fails for the reasons stated above, she is not entitled to any relief under the Declaratory Judgment Act."), *aff'd*, 594 F. App'x 221 (5th Cir. 2014); *Turner v. AmericaHomeKey Inc.*, Civil Action No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) ("Because Turner has not pleaded a plausible substantive claim, the court declines in its discretion to entertain his request for a declaratory judgment."), *aff'd*, 514 F. App'x 513 (5th Cir. 2013).

### C.    The O'Boyle Defendants' Motion

Plaintiff's final cause of action is an IIED claim that she asserts against the O'Boyle

Defendants.  *See* Compl. 23.  Specifically, Plaintiff contends that the O'Boyle Defendants "knew

or should have known that there are numerous violations of the [TILA]" and "knew or should

have known that their client does not have standing to foreclose" on the Property.  *See id.*  In

response, the O'Boyle Defendants contend, among other arguments, that Plaintiff fails to state a

claim for IIED as a matter of law.[12]  *See* O'Boyle Defs.' Mot. 14-18.

To establish a claim of IIED in Texas, a plaintiff must show "(1) intentional or reckless

conduct; (2) that is extreme or outrageous; (3) that caused emotional distress; and (4) that was

severe in nature."  *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 218 (5th Cir. 1995); *see also*

*Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).  "Extreme and

outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community."  *Zeltwanger*, 144 S.W.3d at 445 (internal quotation marks and citation

omitted).  "It is for the court to determine, in the first instance, whether a defendant's conduct

---

[12] The O'Boyle Defendants also argue that the Court lacks subject matter jurisdiction over Plaintiff's IIED claim. *See* O'Boyle Defs.' Mot. 7-8, 10-11, 18.  According to the O'Boyle Defendants, because "Plaintiff has failed to allege how this Court has either Federal Question or Diversity Jurisdiction over this claim," the Court lacks subject matter jurisdiction over Plaintiff's cause of action for IIED.  *See id.* at 11.  This argument is not an accurate statement of the law.  Subject to certain exceptions not relevant here, it is well-settled that a district court may exercise supplemental jurisdiction over any claim arising from the same case or controversy as a cause of action over which the district court possesses original jurisdiction, so long as the federal and state law claims share a common nucleus of operative fact.  *See* 28 U.S.C. § 1367; *see generally United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988).  The O'Boyle Defendants do not contend that Plaintiff's IIED claim does not share a common nucleus of operative fact with Plaintiff's federal claims, and the Court notes that the existence of a common nucleus of operative fact does not appear to be an issue here.

The Court is aware, however, that the general rule in this Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed."  *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).  Nevertheless, this rule is neither mandatory nor absolute.  *Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002).  Here, in the interests of judicial economy, efficiency, and fairness, the Court elects to exercise its supplemental jurisdiction over all of Plaintiff's state causes of action.  *See, e.g.*, *Mendoza v. United States*, 481 F. Supp. 2d 643, 649 (W.D. Tex. 2006).

was extreme and outrageous." *Id.*

Here, the Complaint contains no factual allegations supporting an inference that the O'Boyle Defendants engaged in any wrongful conduct, let alone conduct so outrageous in character as to go beyond all possible bounds of decency in a civilized community.  *See id.*; *see also Strange v. Flagstar Bank, FSB*, Civil Action No. 3:11-CV-2642-B, 2012 WL 987584, at *5 (N.D. Tex. Mar. 22, 2012) ("Plaintiffs' allegations centering on foreclosure and contract issues are far from the type of allegations of outrageous and intolerable conduct required to sustain a claim for intentional infliction of emotional distress."); *Wieler v. United Sav. Ass'n of Tex., FSB*, 887 S.W.2d 155, 159 (Tex. App. 1994) ("Clearly, a foreclosure sale that complies with the terms of the loan agreements and the applicable law would not justify a claim for intentional infliction of emotional distress.").  Moreover, the Court agrees with the O'Boyle Defendants that, in Texas, generally "an attorney cannot be held liable to a third party for conduct that requires the office, professional training, skill, and authority of an attorney."  *Byrd v. Vick, Carney & Smith LLP*, 409 S.W.3d 772, 780 (Tex. App. 2013) (internal quotation marks and citation omitted); *see also Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App. 2005) ("[A] third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, although such conduct is sanctionable or contemptible as enforced by the statutory or inherent powers of the court.").  Accordingly, because Plaintiff fails to plead any facts in support of her claim, and because her IIED claim appears to stem solely from conduct within the scope of the O'Boyle Defendants' legal work on behalf of their client Deutsche Bank, Plaintiff's IIED claim is dismissed.

### D.    Leave to Amend

Having dismissed all of Plaintiff's federal and state causes of action, the Court must

determine whether to grant Plaintiff an opportunity to amend any of her claims.  *See* Compl. 23

(requesting leave to amend in the event the Court dismisses some or all of Plaintiff's claims).

When a court dismisses one or more of a plaintiff's claims pursuant to Rule 12(b)(6), the court

should generally give the plaintiff an opportunity to amend the complaint.  *See Hart v. Bayer*

*Corp.*, 199 F.3d 239, 247-48 n.6 (5th Cir. 2000).  "The court may deny leave to amend, however,

if the defects are incurable or the plaintiffs have already alleged their best case."  *Pierce v.*

*Hearne Indep. Sch. Dist.*, No. 14-50788, 2015 WL 81995, at *5 (5th Cir. Jan. 7, 2015) (citing

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002);

*Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

After due consideration, the Court is of the opinion that Plaintiff should be granted one

opportunity to amend her RESPA notification claim, *i.e.*, her contention that she was not

provided the requisite notice when and if the servicing of the Loan was transferred, and one

opportunity to amend her cause of action to quiet title.  The Court denies Plaintiff leave to amend

all other causes of action because the defects in the Complaint are incurable, and granting

Plaintiff leave to amend these claims would be futile.[13]

In the event Plaintiff elects to amend the Complaint and re-plead the two causes of action

identified above, the Court reminds Plaintiff that legal conclusions will be given no weight in

determining whether she states colorable claims.  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's

obligation to provide the grounds of [her] entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

(internal quotation marks omitted).  Indeed, statements of law are unnecessary; all that Federal

Rule of Civil Procedure 8(a)(2) requires is "a short and plain statement of the claim" with

---

[13] Plaintiff's claims against Barrett Daffin are dismissed without prejudice for failure to effect service.  *See Williams*, 504 F. Supp. 2d at 196 n.13 (citing *Nagle v. Lee*, 807 F.2d 435, 438 (5th Cir. 1987)); *see also Bell*, 2012 WL 568755, at *8 n.1.

enough facts "to raise a right to relief above the speculative level." *See* Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555.

## III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Banks' Motion, ECF No. 11, and the O'Boyle Defendants' Motion, ECF No. 12, are both hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff may file a motion to amend the complaint and re-plead her RESPA notification claim and her cause of action to quiet title on or before **May 4, 2015**. If Plaintiff fails to file an amended complaint by this deadline, the Court will dismiss the Case.

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims are hereby **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the O'Boyle Defendants are dismissed from the Case.

**SO ORDERED.**

**SIGNED this 15th day of April, 2015.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE